**Opinion filed August 31, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00302-CR
_____

## KENNETH MILO LITTLEBRAVE, JR., Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 40th District Court**

**Ellis County, Texas**

**Trial Court Cause No. 34569CR**

### M E M O R A N D U M   O P I N I O N

A jury convicted Kenneth Milo Littlebrave, Jr., of the offense of burglary of a habitation with the commission of a felony other than felony theft. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011). The jury assessed punishment at confinement for life. Appellant appeals from the conviction with two points of error. We affirm.

At the time of the offense, B.S. was a ten-year-old girl living in Waxahachie, Texas, with her grandparents, Margo and Luis Valdez, and her two sisters, A.S. and M.S. B.S. and A.S. shared a room in the residence. One night, B.S. was awakened in her bedroom by someone

pulling down her pants. The person was wearing black clothes and had a bandana over his face. The person then took B.S. to the living room of the house, laid her down, covered her mouth, and touched her female genitalia. B.S. heard A.S. call her name, and B.S. screamed, causing the perpetrator to leave.

B.S. and A.S. ran to their grandmother's room and told her what happened. At first, Margo Valdez thought the girls might have been having a nightmare, but then she looked around the house and saw that the screen to the kitchen window had been torn open and that someone had come into the house. She also saw that the front door was open. Valdez called the police.

Officer Richard Powell of the Waxahachie Police Department arrived at the residence and spoke with B.S. B.S. made an outcry of sexual abuse to Officer Powell. Officer Powell notified all other police officers to "set up a perimeter and attempt to catch this fellow." Police then began a search of the area.

Lieutenant Marcus Brown was the watch commander for the Waxahachie Police Department that night. The night after the incident, as part of the effort to catch the perpetrator, Lieutenant Brown was observing the intersection of Dunn Street and Sycamore Street when he noticed Appellant walking toward him. Appellant was wearing a dark jacket, a "hoodie" and gloves, which matched the general description of the perpetrator, as well as other prowler reports that had been received in the area. Lieutenant Brown flashed his spotlight on Appellant, and Appellant started to walk away. Appellant surrendered after Lieutenant Brown ordered him to stop. Appellant immediately started apologizing, saying that he was sorry and that he did not mean to look suspicious. Lieutenant Brown handcuffed Appellant and searched him, finding a cell phone, a pen light, a knife, a set of vise grips and a black bandana. In his experience as a police officer, Lieutenant Brown found those items to be common burglary tools. The bandana was tied in a manner that would be consistent with concealing a person's face.

The night of Appellant's arrest, Lieutenant Todd Woodruff interviewed him at the police station. Appellant gave a written statement to Lieutenant Woodruff. Appellant admitted that he had gone into a house close to where he lived. He saw that the front window to the kitchen was open, so he cut the window screen and went inside. He "found two girls in a bed" and picked up the smaller of them. He "carried her into the living room" and "[t]he thought came to [his] mind to kiss her," but according to Appellant, he decided not to. Appellant stated that he "accidentally

2

touched her between her legs" when he set her down in the living room but that he "wasn't meaning to." When the girl screamed, he ran out of the house through the front door, which he had earlier unlocked in case he needed to make a quick exit.

Police executed a search warrant for Appellant's residence in the Brown Motel in Waxahachie. Inside, they found two large flathead screwdrivers that could be used as burglary tools and two bandanas.

In his first point of error, Appellant complains that the trial court erred in not suppressing his written statement. Appellant filed a pretrial motion to suppress his written statement, which was denied after a hearing. At the hearing on the motion to suppress, Lieutenant Woodruff testified that he advised Appellant of his *Miranda*[1] rights. The interview started at about 1:45 a.m. Appellant had been in custody for about thirty minutes prior to that. Lieutenant Woodruff spoke with Appellant for about an hour to an hour and one-half before he typed the voluntary statement. Appellant could read and write and had graduated from high school, but Lieutenant Woodruff did not venture an opinion of how intelligent Appellant was. Appellant gave "logical and appropriate" responses to the questions Lieutenant Woodruff asked "[f]or the most part," but he did, at one point during the interview, start chanting Sioux war songs.[2] Appellant agreed to waive all of his rights and give a written statement to Lieutenant Woodruff.

In a pretrial hearing on a motion to suppress, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony, and we are not at liberty to disturb any finding supported by the record. *Self v. State*, 709 S.W.2d 662, 665 (Tex. Crim. App. 1986). Mixed questions of law and fact that turn on the evaluation of credibility and demeanor should also be given "almost total" deference. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Mixed questions of law and fact that do not turn on the evaluation of credibility and demeanor should be reviewed de novo by the appellate court. *Id.*

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]Appellant is a member of the Rosebud Sioux Tribe.

3

The question of whether the confession of the defendant is voluntary must be determined from the totality of the facts and circumstances. *Barton v. State*, 605 S.W.2d 605, 607 (Tex. Crim. App. 1980). The State has the burden to show, by a preponderance of the evidence, that the defendant knowingly and intelligently waived his privilege against self-incrimination. *Barnett v. State*, 771 S.W.2d 654, 658 (Tex. App.—Corpus Christi 1989, no pet.).

Appellant contends that he did not have the capacity to waive rights and that, therefore, he could not give a voluntary statement. The record does not support this assertion. As noted above, Appellant was a high school graduate who answered the questions asked of him in a logical and appropriate fashion. Appellant did not show that he was mentally ill or suffered from any cognitive deficit. Moreover, even if he had made a showing of those conditions, they would not have compelled a finding of an involuntary confession absent a showing of police coercion. *See Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (defendant's mental condition, apart from its relation to official coercion, is not dispositive of an inquiry into constitutional voluntariness); *Walker v. State*, 842 S.W.2d 301, 303 (Tex. App.—Tyler 1992, no pet.). Appellant did not show any police conduct that would or could amount to coercion in his interrogation, and the State carried its burden to show that the statement was voluntary. Appellant's first point of error is overruled.

In his second point of error, Appellant contends that the evidence was insufficient to support his conviction. Our standard of review in evaluating the sufficiency of the evidence is to determine, after viewing all of the evidence in a light most favorable to the verdict, whether any rational finder of fact could have found the existence of the elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibbs v. State*, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991). Our duty is not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the elements in question beyond a reasonable doubt. *Gibbs*, 819 S.W.2d at 834; *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988). The sufficiency test must be applied to the application paragraph in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). When the appellate court is faced with facts that support conflicting inferences, it must presume that the finder of fact resolved the conflict in favor of the verdict, and any inconsistencies must be resolved in favor of the verdict. *Farris v. State*, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990).

Appellant's contention that the evidence is insufficient rests on the idea that the confession is involuntary, and he implicitly argues that the review of the evidence should not include the confession. We have already found that the trial court did not err in finding the confession voluntary.[3]

Appellant was charged with intentionally or knowingly entering the residence of Margo Valdez without her consent and then committing or attempting to commit the offense of indecency with a child. As specified in the jury charge, the elements of indecency with a child that the State had to prove were that Appellant touched the genitals of B.S. with the intent to arouse and gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). The State amply proved all of the elements, including the element that he intended to arouse and gratify his sexual desire. While Appellant stated in his confession that his touching of the vagina was accidental, B.S.'s testimony was quite clear that it was an intentional act, given the fact that he pulled down her pants. The jury resolves conflicting evidence, and it is not our province to resolve any conflicting fact. *See Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981) (" A jury is entitled to accept one version of the facts and reject another or reject any of a witness' testimony."); *see also Nevarez v. State*, 847 S.W.2d 637, 642 (Tex. App.—El Paso 1993, pet. ref'd) (appellate court does not resolve any conflict of fact or resolve credibility of witnesses). The jury resolved the conflict in this case in favor of the child's testimony. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

ERIC KALENAK
JUSTICE

August 31, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

---

[3]Also, as the State correctly points out, even erroneously admitted evidence is considered in a sufficiency review. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Thus, we would have considered the confession in our sufficiency analysis even if we had found that the confession had been erroneously admitted.